708 · KENTUCKY REPORTS. [Vol. 117

City of Lexington v. Woolfolk.
Same v. Hayman.

CASE 83—ACTIONS BY THE CITY OF LEXINGTON AGAINST W. T. WOOL-
FOLK AND J. Q. A. HAYMAN TO ENFORCE LIENS FOR STREET IM-
PROVEMENTS.—FEB. 25.

# City of Lexington v. Woolfolk.
# Same v. Hayman.

### APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENTS FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—LIENS—SALE—
RIGHT OF REDEMPTION—STATUTES—COMPLAINT.

Held: 1. Kentucky Statutes, 1903, section 3187, requires tax bills
to be sold by the city treasurer at public auction to the highest
bidder, and provides that the owner of any lot, the tax bill on
which has been sold, shall have the privilege of redeeming
the same within one year. It also provides that, if no one will
offer the face of the tax bills, the auditor shall bid them in
for the city, and that, when the city shall bid in the tax bills,
the city solicitor shall, by proper proceedings in the name of
the city, enforce the lien on the property for the city. HELD,
that a property owner who allows his property to be sold for
street improvements, and bid in by the city, has no right of
redemption.

2. Under Kentucky Statutes, 1903, section 3100, providing against
errors in the proceedings of the general council invalidating
the taxpayers' obligation after the work has been done, and
that the general council and the courts in which suits may be
pending shall make all corrections, rules, and orders to do jus-
tice to all parties concerned, it was intended to avoid a strict
construction with reference to such proceeding.

3. Where a city buys in property sold for street improvement as-
sessments under Kentucky Statutes, 1903, section 3187, pro-
viding that, if no one will offer the face of the tax bills, the
auditor shall bid them in for the city, the penalties and com-
pound interest to be imposed when the sale of the tax bill by
the treasurer is to another than the city do not apply.

4. Under Kentucky Statutes, 1903, section 3187, requiring delin-

City of Lexington v. Woolfolk.
Same v. Hayman.

quent tax bills to be advertised by the auditor and sold by the treasurer on the first Monday in the next month after they shall have come to his hands, as such, the fact that the sale of the tax tax bills did not take place, and were not advertised to take place, on the first Monday in the next month after they had been listed with the treasurer, does not invalidate the purchase of the tax bills by the city.

5. Where a petition by a city to enforce a lien on property for unpaid assessments for street improvements, predicated on certain city ordinances, refers to them in a general way, and recites that a copy of such ordinance is filed with and made part of the petition, the pleading is sufficient, though the copy is not in fact filed therewith.

ALLEN & DUNCAN, FOR APPELLANT.

### SUMMARY.

Summarizing the argument in the foregoing pages, our original and alternative propositions are as follows:

1. The court below has jurisdiction of the cause of action.

2. A sale of special tax bills is not required by the statute as a condition precedent to the right to sue.

3. Even if a sale be held necessary the right of action matures immediately thereafter, as the privilege of redeeming within a year does not exist unless there is an actual sale of the bill. Where the city nominally buys there is no sale.

4. Even if the privilege of redemption be held to exist where the bill is bid in for the city, yet in the present case the appellee has actually had a longer period within which to pay these bills than the one year period of redemption granted by the statute, and having been requested repeatedly to pay, he can not object that this suit was brought prematurely.

5. The statute of limitation does not begin to run against any part of the tax until the entire tax becomes due.

MORTON, WEBB & WILSON, FOR APPELLEE.

Upon our presentment of the case we submit that we have proven:

1. That the record does not show the contract or any of its provisions or any copy of it under which this work was done.

2. That the record does not show the numerous ordinances under which this work was done.

710                 KENTUCKY REPORTS.              [Vol. 117

City of Lexington v. Woolfolk.
Same v. Hayman.

3. That the record does not show any of the plans, specifications and estimates, under which the work was done.

4. That the record does not show the specifications upon which the bid of the contractor was made, nor what was the bid of the contractor.

5. The record does not show the plans and specifications for sewerage.

6. The record does not show how the whole of this proceeding was changed by one ordinance amending another.

If the petition and record is defective in all these respects, and this can not be denied, then the lower court was correct in sustaining the general demurrer to the petition.

7. We submit that we have shown that the requirements of the statutes as to the sale of tax bills were not complied with. If this is true the demurrer should have been sustained.

8. We have shown that appellee was not allowed one year after the tax sale within which to redeem his property and for this the demurrer should have been sustained.

### AUTHORITIES CITED.

Louisville Water Co. v. Com., 89 Ky., 244; City of Louisville v. Gas Co., 15 R., 177; Ormsby v. Louisville, 79 Ky., 197; McAboy v. Gosnell, &c., 22 R., 1187; Babbitt v. Woolley, 3 Bush, 704; Terrell v. Rowland, 86 Ky., 75; Johnson v. City of Louisville, 11 Bush, 537; Corbett v. Nutt, 10 Wallace, U. S., 464; Dubois v. Hepburn, 10 Pet., 22; Cooley on Taxation (last ed.), chap. 16, p. 1023.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

The city of Lexington is attempting by these suits to enforce liens on appellees' lots abutting certain of its streets for the cost of reconstructing the streets with brick at those points. The circuit court dismissed the city's petitions on demurrers.

Under section 3096, Ky. St., 1903, the general council of a city of the second class may by ordinance provide for the reconstruction of its streets, upon the petition of the owners of a majority of the property abutting the streets to be improved, or by a two-thirds majority vote of all the

members elected to each board of the general council. The costs of such reconstruction is one half chargeable to the abutting property, pro rata per the front foot, and the other half to be paid by the city. By section 3101 it is provided that the general council may provide that any such reconstruction shall be made on the ten year plan. In that event, upon public notification, the property owners who are charged with half the cost of the improvement are required to pay their respective portions of the assessment in cash at a time fixed in the notice. Upon default of such payment, the general council is authorized to borrow money to discharge the cost of the improvement, and to issue the city's bonds therefor, payable in equal installments through ten years, and bearing interest. The abutting owners, who have not paid in cash their assessments, are required to pay one-tenth of such assessment, and 5 per cent. per annum interest thereon, and 5 per cent. per annum interest on the remaining assessment unpaid, annually, at such time as shall be specified in the assessing ordinance. The manner of collecting the annual installments, and, indeed, of collecting the whole assessment, is the main point in controversy in these suits. By section 3096 it is provided: "There shall be a lien upon such lots or parcels of real estate for the part of the cost of such improvement so assessed thereon, and the same shall bear interest from the time of the assessment. All such liens may be enforced by action." In section 3101, speaking of the default in paying the annual installments discussed above, it is provided: "In default of such payment at such times, the same penalty shall attach on the amount so payable as attaches to the non-payment of other municipal taxes, and shall be collected, together with the amount so due from the owner or owners of such lot or parcel

of land, in the same manner as other city taxes and penalties are collected for municipal purposes, and such assessments and penalty shall be and remain a lien upon such lot or parcel of land until the same has been fully paid and satisfied."

The general council of Lexington ordained that the streets in question be improved by brick paving, having been petitioned by the owners of a majority of the front-foot property abutting the proposed improvement. The work was completed, inspected, and accepted; and the general council ordained that the assessment for these improvements be paid on July 1, 1895, and annually thereafter for ten years. Appellees failed to pay their assessments in cash. In May, 1903, the city caused the tax bills, including the assessments and penalties and interest for each of the years 1895, 1896, 1897, 1899. 1900, 1901, and 1902, to be offered for sale at public outcry. There being no other bidder, they were bid in by the city. This proceeding was taken by the city under section 3187, Ky. St., 1903, governing the method of collecting "other city taxes and penalties." Section 3187 requires the delinquent tax bills to be advertised by the auditor and sold by the treasurer "on the first Monday in the next month" after they shall have come to his hands as such. The sale must be for cash "at public auction to the highest bidder." The auditor then returns the bills to the treasurer, who on said day offers them for sale as advertised, if then unpaid. "If no one will offer the face of said bills for them, he shall buy them in for the city." The section continues: "The owner or owners of any lot, the tax bill on which has been sold, shall have the privilege of redeeming the same within one year of the day of sale by paying to the treasurer

City of Lexington v. Woolfolk.
Same v. Hayman.

the said bill, with all penalties and interest as herein pro-
vided to the day of payment."

It is the contention of appellees that the taxpayers—in
these cases, the lot owners—have one year from the date
of the sale of the delinquent assessments or tax bills in
which to pay the amount, before a suit can be brought by
the city to enforce the lien on the lots. The complication
in the application of this provision is doubtless due to the
fact that it is particularly applicable in all its features to
the collection of ordinary tax bills alone. There is no pro-
vision in the chapter governing cities of the second class,
other than in this section, for a lien upon specific property of
the taxpayer to secure his city taxes. This lien is made
to attach upon the sale of the tax bill as above provided.
The purchaser of the tax bill at such sale acquires a lien
on the lot described in the tax bill, but which he can not
enforce for one year from the date of sale. The section, con-
templating that the city might buy in the bills, provides in
that event: "When the city shall buy in the tax bills, the
city solicitor shall, by proper proceedings in the name of
the city in the circuit court, enforce a lien on the property
for the city." There is no express reference in the section
or elsewhere to a time for redemption from the sale to the
city. It is argued that the Legislature could not have in-
tended that the taxpayer should have one year in which
to redeem from the sale if the bill was sold to any other
person, while, if it was sold to the city, there would be no
time for redemption. The argument proceeds upon the
theory that the Legislature was looking alone to the interests
of the delinquent taxpayer. This supposition is erroneous.
The first thing in view in enacting the section was to pro-
vide a sure and speedy method of collecting the city's rev-

enues, so essential for the maintenance of its government. The rights of the taxpayer were regarded merely incidentally, and must be secondary to the right of the city to subsist. There could be no good reason for putting the delinquent taxpayer's interest first. After having been afforded a fair chance, and reasonable time within which to meet his tax obligation, further indulgence by way of encouragement to more protracted delinquency, and to further postpone the collection of the city's revenues, would be contrary to the purpose of the statute. That the city was not to be put off longer is reasonably certain from the whole section. Note that the sale of the tax bill was to be by summary proceeding, and for cash in hand. The purchaser was given a liberal interest, in the way of percentage and penalties, to justify his investing his money, so as to encourage his bidding. This was an inducement to insure the city's getting the money due it quickly, and not as a punishment to the delinquent. True, the latter is given a year in which to redeem from that sale. A shorter time would scarcely have afforded enough of interest to justify an outsider's buying in such claims. Yet to give the whole of an adequate penalty to such purchaser at once might be very harsh treatment of the taxpayer, so that, by giving the purchaser a good bargain to tempt him to buy and part with his money, and by giving the delinquent a whole year in which to redeem from that sale, something of an equitable arrangement is made, and the city is relieved. But none of these reasons apply where the city is the "purchaser" of the tax bill. The delinquent taxpayer has already been given his full time—the same as given all others—to pay the tax. Under the law, the city can not levy more than enough to pay its current and fixed expenses. Consequently it can not have a surplus

City of Lexington v. Woolfolk.
Same v. Hayman.

of ready money to meet deficits. The city's administration of its government, as well as its credit, depends on its ability to promptly collect the taxes due it—the principal and practically the sole source of its income. When no one else will offer to buy the taxbill at the sale, the city has exhausted all efforts, save one, to collect the tax. It already has a lien on the property. The penalties have been added already, not as a matter of speculation or gain to the city, but as an incentive to the taxpayer to pay promptly, so as to avoid them. They have been unavailing, though. Why should the city be compelled to wait another year before taking the only remaining and efficient step to get its money? No other consideration could be advanced than a sentimental regard for the delinquent, who has been deaf to every call and impervious to every claim that he should meet his obligation. In the absence of express declaration that such was the legislative intent, we can not reasonably adopt it; it is so obviously at war with the whole purpose of the section being interpreted. Furthermore, the section does not, in terms, give the right of extended redemption when the city buys in the bill, as it does where another buys it.

It is argued that the statute must be construed strictly against the city and in favor of the taxpayer; that all laws must be construed strictly against the taxing power. When the inquiry is, has the power to tax been granted, has it been exercised, or is its object a governmental purpose, such construction would doubtless be followed. But when the power exists, and has been exercised in the aid of a governmental function, why should the statute regulating the manner of collecting the tax be strictly construed? It is true, taxes are not debts. Yet they are obligations of the very highest nature, imposing at least a patriotic duty on the citizen to

716 KENTUCKY REPORTS. [Vol. 117

City of Lexington v. Woolfolk.
Same v. Hayman.

pay them. The sustenance of the government, and consequently the enjoyment of all its privileges, depend upon the prompt collection of its revenues. Statutes imposing and providing for the collection of taxes are to be construed fairly with regard to their purpose; the office of construction being to help do what the Legislature intended should be done in enacting the law. In applying and enforcing such statutes, we are not yielding the stubborn submission of unwilling subjects, but are applying those reasonable and necessary provisions for the maintenance of an orderly social compact among a self-governing people. A rule of strict construction that thwarts the purpose of the Legislature, and makes unduly difficult the thing that was intended to be made simple, direct, and easy, will be rejected. The rule of interpretation here adopted is in harmony with the Legislative direction in this respect. Section 3100, Ky. St., 1903, expressly provides against errors in the proceedings of the general council invalidating the taxpayer's obligation after the work has been done. But it is stated that the "general council or the courts in which suits may be pending shall make all corrections, rules and orders to do justice to all parties concerned." This was intended to avoid that line of strict construction adopted with reference to such proceedings, and to place them on the same footing in the courts as other claims of liens sought to be enforced.

From these sections, we conclude that the abutting lots were in lien to the city for these assessments, which were due in installments, on July 1st, annually, beginning with the year 1895, but not including the penalties and compound interest to be imposed where the sale of the tax bill by the treasurer was to another than the city; that the city, by buying in the tax bills, got no new or greater lien than it

had before; and that the provision for a year for redemption does not apply where the city "buys the bill"—that is, fails to sell it. We are also of opinion that the circuit court had the jurisdiction to entertain these suits at any time after the assessments became finally delinquent.

Appellees contend that as the sale of the tax bills did not take place, nor were they advertised to take place, on the first Monday in the month after they had been listed with the treasurer, the city has acquired no rights by the sales, and that they were invalid. Authorities are cited to the effect that, when a tax sale is required to be had on a day named, a sale on any other day is void. But none of those authorities hold that for that reason the tax assessment is void, or that the lien is extinguished or lessened. The argument followed out, would mean that these assessments can never be collected, for the first Monday of the first month after they became delinquent having passed without an advertisement or sale of the bills, they can never be legally offered, and therefore no right to sue to enforce the lien given by them can ever accrue to any one. If the sales had been made in fact, and some one had bought the tax bills, then this defense might be pertinent. But here there was no sale. There was merely an offer of sale. This section wherein the city is permitted to sell the delinquent tax bills is manifestly for the benefit of the city. Before another than the city could have the right to maintain a suit to enforce a lien on the lot, the statute giving such right must be shown to have been substantially complied with. If the city failed to offer the tax bill for public sale, the lot owner has no ground of complaint. He still owes the assessment. It is past due and delinquent in every sense of the word. Section 3096 gave the lien, and the right of the city to sue

in the circuit court to enforce it. The provision of section 3101 as to offering the tax bill for sale is merely cumulative, enabling the city to realize the money due it quicker, possibly, than by suit.

Very earnest complaint is made by appellees of the form and sufficiency of the petitions. It is argued that the general demurrers were properly sustained on this ground, if no other. The pleader, in setting out the various ordinances and steps by which the city obtained the lien on appellees' lots for the cost of the improvement of the abutting ways, did not plead the ordinance at length. The following from one of the petitions will serve to illustrate the matter complained of: "High street. . . is one of the public streets of the plaintiff. That the owners of a majority of the front or abutting feet of the real estate abutting on said street petitioned the general council to provide for the reconstruction of said street with brick. That thereafter the general council (two-thirds of the members elect in each board voting therefor) passed Ordinance No. 422, which was duly approved and published in the official newspaper (a copy of said ordinance being filed herewith, marked 'Exhibit A,' and made a part hereof, the same as if fully written herein), directing the roadway of the street aforesaid to be constructed by blocks with brick. That the city engineer, in accordance with the directions contained in said ordinance, prepared accurate profiles, plans, specifications, and estimates for the reconstruction of said street with brick, which were accepted and approved by the general council by Ordinance No. 453, which was approved and published in the official newspaper (a copy of said ordinance being filed herewith)" —and so on, setting out similarly every essential step required by the statute to be taken to make a valid contract

for the improvement. It is insisted that the ordinances are not sufficiently pleaded. We think they are. Good pleading not only does not require, but forbids, the setting out of each step with undue prolixness. Although the copies of ordinances referred to as exhibits are not filed with the petition, the averments are sufficient. That an ordinance to improve a certain street with brick was duly passed, is enough to state. That the engineer did make and file plans and specifications, which were adopted by the council, fully apprises the other party and the court that those necessary steps had been taken. So the substance of the contract by which the lowest bid was accepted is enough to be pleaded.

The judgments sustaining the demurrers and dismissing the petitions appear to us to be erroneous, and are, for the reasons above stated, reversed, and the causes are remanded for further proceedings consistent herewith.

Petition for re-hearing by appellee overruled.

Whole court sitting.